# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

DAVID MILLER,

        Plaintiff,

v.                                Case No: 2:16-cv-779-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

## OPINION AND ORDER

Plaintiff David Wayne Miller seeks judicial review of the denial of his claim for disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED**.[1]

### I.    Issues on Appeal[2]

Plaintiff raises three issues on appeal: (a) whether the Administrative Law Judge ("ALJ") properly assigned weight to the opinion of consulting neurologist, Eshan Kibria, D.O.; (b) whether substantial evidence supports the ALJ's assessment

---

[1] Both parties have consented to the jurisdiction of the United States Magistrate Judge. Docs. 23, 24.

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

of Plaintiff's residual functional capacity ("RFC"); and (c) whether the ALJ properly assessed Plaintiff's credibility.

## II.     Summary of the ALJ's Decision

Plaintiff filed a claim for disability and DIB on November 21, 2011 claiming disability beginning on January 1, 2011[3] stemming from inability to lift his left arm, traumatic head injury, severe bulging disc in his neck, bilateral carpal tunnel and vision impairment.   Tr. 110-121.   Plaintiff's claim was denied initially and on reconsideration.   Tr. 121, 131, 228.   Plaintiff then filed a Request for Hearing by ALJ on June 6, 2012.   Tr. 149-50.   On February 23, 2015, ALJ M. Dwight Evans issued a decision finding Plaintiff not disabled from January 1, 2011 through the date of the decision.   Tr. 51.   At step one, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016, and had not engaged in substantial gainful activity since January 1, 2011.   Tr. 41. At step two, the ALJ determined that Plaintiff had the following severe impairments: left shoulder degenerative joint disease and rotator cuff tear, cervical disc herniation with radiculopathy and cognitive and depressive disorders.   *Id.*   At step three, the ALJ concluded that Plaintiff did not have "an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   Tr. 42.   The ALJ then determined that Plaintiff had the RFC to perform light work[4] with the following

---

[3] Plaintiff originally alleged his disability began July 14, 2009, but later amended the onset date.   Tr. 209-15, 228.

[4] The regulations define light work as follows:

limitations:

> [Plaintiff is limited to] frequent climbing of ramps and stairs and balancing, occasional stooping, kneeling, crouching, and crawling, and no climbing of ladders, ropes, or scaffolds. The [Plaintiff] can use the left upper extremity for frequent reaching at or above shoulder level and occasional overhead reaching. The [Plaintiff] can engage in unlimited handling, fingering, and feeling. The [Plaintiff] can understand, remember, and carry out simple instructions and can occasionally interact with co-workers, supervisors, and the public. The [Plaintiff] can concentrate and persist with regard to simple instructions, in two-hour segments, and can adapt to gradual changes in the work setting. The [Plaintiff] can meet average production demands.

Tr. 44. Next, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 50. Considering Plaintiff's age, education, work experience and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform and therefore concluded he was not disabled. Tr. 50-51.

### III.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)

---

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

(citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).[5] Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citation omitted). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The Court

---

[5] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments. *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c and 404.1527 (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016). The Court will apply rules and regulations in effect at the time of the ALJ's decision. *Green v. Soc. Sec. Admin., Comm'r,* — F. App'x —, 2017 WL 3187048, at *4 (11th Cir. July 27, 2017) (declining to apply SSR 16-3p retroactively to the ALJ's decision); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

IV.   **Discussion**

   *a.   Weight given to the opinion of consulting neurologist, Dr. Kibria*

Plaintiff first argues that the ALJ erred in assigning little or partial weight to portions of the opinion of consulting neurologist Dr. Kibria.   Doc. 17 at 7-10.   The Commissioner responds that the ALJ was not required to assign any specific weight to Dr. Kibria's opinion because Dr. Kibria was a one-time examiner and not a treating source.   Doc. 21 at 4-9.

Dr. Kibria performed an independent neurological evaluation of Plaintiff on September 16, 2014.   Tr. 1216.   In his report, Dr. Kibria stated in pertinent part that Plaintiff was able to lift up to twenty pounds occasionally, carry up to ten pounds occasionally, sit for four hours without interruption, stand for one hour without interruption, walk for one hour without interruption, sit for four hours total in a work day, walk for two hours total in a work day and stand for two hours in a work day. Tr. 1219-20.   Dr. Kibria further opined that Plaintiff was able to use his left and right feet for the operation of foot controls frequently; reach overhead with both arms frequently; reach, handle, finger, feel, push and pull with his right hand frequently; and reach, handle, finger, feel, push and pull with his left hand occasionally.   Tr. 1221.

The ALJ stated that he gave partial weight to Dr. Kibria's opinion as to Plaintiff's ability to lift and carry because there was no support in the record for Dr.

Kibria's determination that Plaintiff was able to lift a different amount of weight than he could carry.[6] *Id.* The ALJ accorded little weight to Dr. Kibria's opinions concerning Plaintiff's ability to sit, stand, walk, and use foot controls because it was inconsistent with the physician's contemporaneous evaluation of Plaintiff, which indicated that Plaintiff had "normal gait and station and full motor strength in the lower extremities." Tr. 48, 1217. As to Dr. Kibria's opinion about Plaintiff's ability to use his hands and reach overhead, the ALJ actually imposed greater limitations than those recommended by Dr. Kibria because he found that Dr. Kibria "did not adequately account for the effect of claimant's left shoulder impairment on his ability for overhead reaching." Tr. 48. Finally, the ALJ accorded little weight to Dr. Kibria's opinion about Plaintiff's environmental limitations, because the ALJ found that the record contained no evidence of pulmonary impairments or headaches that would support such limitations. Tr. 48.

When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and

---

[6] The Court notes that although the ALJ assigned partial weight to Dr. Kibria's opinion that Plaintiff can lift 20 pounds occasionally and carry 10 pounds occasionally, ultimately the ALJ's RFC stated that Plaintiff was able to perform light work, which includes "lifting no more than 20 pounds at a time with *frequent* lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b) (emphasis added). The ALJ's opinion provides no explanation for this discrepancy. *See* Tr. 39-51. Plaintiff, however, did not challenge this aspect of his RFC. *See* Doc. 17 at 10-13 (challenging the RFC only as it relates to Plaintiff's inflammatory polyarthritis). Accordingly, this issue is waived. *See Access Now,* 385 F.3d at 1330.

any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert opinion evidence of nonexamining sources by the ALJ, but the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner. SSR 96-6p; 20 C.F.R. § 404.1527(d)(1)-(2). Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of other consultants, doctors or medical specialists. 20 C.F.R. § 404.1527(e)(2); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).

Dr. Kibria is a one-time consulting examiner whose opinion is entitled to no particular weight. *See* 20 C.F.R. § 404.1527(c)(2); *see also Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 878 (11th Cir. 2013) (finding that the opinion of a non-treating physician is not entitled to any deference or special consideration). As noted by the Commissioner, a one-time examiner such as Dr. Kibria is not a treating source, and thus there is no longitudinal or treatment relationship between physician and patient. Doc. 21 at 7 (citing *Eyre v. Comm'r, Soc. Sec.*, 586 F. App'x 521, 523 (11th Cir. 2014). Here, the ALJ carefully considered the various portions of Dr. Kibria's opinion when assessing Plaintiff's RFC, and explained his reasons for discounting the weight of certain portions of the opinion, when he did so. *See* Tr. 47-48.

The only inconsistency with respect to Dr. Kibria's opinion the Court finds in the ALJ's opinion is in his discussion of Plaintiff's environmental limitations. Tr. 48. The ALJ stated the record contained no evidence of impairments that would justify such limitations, such as "pulmonary impairments or headaches." Tr. 48. Although there is no medical evidence in the record that Plaintiff has any pulmonary impairments, the record does in fact contain evidence that Plaintiff suffers from headaches and/or migraines. *See, e.g.*, Tr. 325, 332, 356, 358, 453, 747, 1216. But Dr. Kibria's report notes Plaintiff's headaches only "occur occasionally" and shows no connection to environmental factors. Tr. 1216. Moreover, out of eight records cited by Plaintiff discussing his migraines, five are records from before the alleged onset date. *See* Tr. 325, 332, 356, 358, 507. Of the remaining three citations, one is the report of Dr. Kibria himself. Tr. 1216. Another is the opinion of a consultative examiner who notes "migraines" under Axis III, but makes no mention of the frequency or severity of Plaintiff's migraines. Tr. 453. The last is an undated record that notes "migraines," but offers no insight into the frequency or severity of migraines. Tr. 747. As a result, although the ALJ may have been incorrect in stating that there was no evidence of headaches in the record, this error was harmless, as the records do not show Plaintiff suffered from more than occasional migraines or that Plaintiff had any further limitations stemming from his migraines, including environmental limitations. Tr. 48; *see Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (finding that mere diagnosis of an impairment alone is not sufficient, and plaintiff has the burden to show the effect of an impairment on his

ability to work); *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (finding error harmless if it does not affect the judge's ultimate determination). Thus, the ALJ did not err in excluding environmental limitations for migraines because Plaintiff provided no support for such limitations. *See* Tr. 453, 747. Moreover, the Court finds no error in the ALJ's decision to accord limited or partial weight to the other portions of Dr. Kibria's opinion discussed above.

### b. *Plaintiff's RFC*

Plaintiff next argues that the ALJ's RFC assessment was not supported by substantial evidence because it did not account for Plaintiff's inflammatory polyarthropathy. Doc. 17 at 10-13. The Commissioner responds that Plaintiff did not carry his burden to prove that his inflammatory polyarthropathy imposed any additional limitations on his ability to work. Doc. 21 at 9-12. Within his argument, Plaintiff makes several sub-arguments: (1) whether the ALJ properly included limitations arising from plaintiff's inflammatory polyarthropathy in Plaintiff's RFC; (2) whether the ALJ properly considered the compounding effects of Plaintiff's obesity on his pain symptoms and limitations; and (3) whether the ALJ posed a proper hypothetical to the vocational expert ("VE").

The RFC is the most that a claimant can do despite his limitations. *See* 20 C.F.R. § 404.1545(a). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20

C.F.R. § 404.1545(a). The claimant's age, education, work experience, and whether he can return to his past relevant work are considered in determining his RFC, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite his impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

### *i. Limitations in Plaintiff's RFC*

Plaintiff first alleges that the ALJ erred by not including limitations for plaintiff's inflammatory polyarthropathy in Plaintiff's RFC. Doc. 17 at 11-12. To the contrary, as discussed below, the ALJ considered Plaintiff's inflammatory polyarthropathy and included limitations for it within Plaintiff's RFC.

As an initial matter, the ALJ determined that Plaintiff's bilateral hand polyarthritis was non-severe. Tr. 42. In reaching this conclusion, the ALJ noted that Plaintiff had exhibited swelling and decreased range of motion in May 2013 (Tr. 739), but by August 2013 medical records indicated that the polyarthritis was not constant and was relieved with medication (Tr. 478). Tr. 42. A November 2013 x-ray showed normal findings;[7] and although Plaintiff continued to experience symptoms through March 2014, a September 2014 consultative examination revealed normal gross and fine finger dexterity. Tr. 42, 459, 478, 486-89, 1217. The consultative examiner noted Plaintiff alleged flare-ups that occurred 2-3 times per

---

[7] The Court is unable to verify this particular finding as the pages cited to by the ALJ are illegible in the record provided to the Court. *See* Tr. 486-89

week for 1-2 hour intervals. Tr. 1217. This evidence led the ALJ to conclude the Plaintiff's bilateral hand polyarthritis was non-severe. Tr. 42. Plaintiff did not challenge this finding of the ALJ, thus it is deemed waived.[8] *See generally* Doc. 17.

Although the ALJ determined that Plaintiff's bilateral hand polyarthiritis was non-severe, he nonetheless considered it – along with the rest of the record – when discussing Plaintiff's RFC. Tr. 44-50. Specifically, the ALJ noted Dr. Kibria's opinions on Plaintiff's postural limitations, including "no more than occasional performance of all postural activities except climbing ladders, ropes, or scaffolds, which [Dr. Kibria] determined that [Plaintiff] can never do," and determined this opinion was entitled to great weight as it was consistent with the record, particularly concerning Plaintiff's "impairments of the shoulder, cervical spine, and *hand.*" Tr. 48 (emphasis added), 1222. Thus, despite the ALJ's finding that Plaintiff's inflammatory polyarthropathy was non-severe, he nonetheless considered its effects, albeit minimal, on Plaintiff's ability to perform work and accounted for it in Plaintiff's RFC by including postural limitations consistent with Plaintiff's medical records. *See* Tr. 44, 48; 20 C.F.R. § 404.1545(a); *Phillips*, 357 F.3d at 1238.

Moreover, as conceded by Plaintiff, the ALJ discussed and considered the opinions of Dr. Kibria concerning Plaintiff's ability to perform activities with his hands, including reaching. *See* Doc. 17 at 12. Specifically, the ALJ noted that "Dr. Kibria limited the claimant to no more than frequent performance of all activities with the right hand, and no more than occasional performance of all activities with

---

[8] *Access Now*, 385 F.3d at 1330.

the left hand, aside from overhead reaching, which . . . [Plaintiff] can do no more than frequently." Tr. 48. The ALJ accorded this opinion partial weight, and limited plaintiff to "us[ing] the left upper extremity for frequent reaching at or above shoulder level and occasional overhead reaching." Tr. 44.

Plaintiff further argues that Dr. Kibria "imposed significant restrictions in Plaintiff's ability to use his hands, which were rejected by the ALJ," and states that this error is harmful because "light work generally requires the use of arms and hands to grasp, hold, and turn objects." Doc. 17 at 12. The Court already considered and addressed at length the ALJ's consideration of Dr. Kibria's opinions and found it to be without error. As has been noted by the Eleventh Circuit, "[t]he mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work, nor does it 'undermine the ALJ's determination' regarding [Plaintiff's] ability to work." *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005)). The ALJ considered the record as a whole relating to Plaintiff's inflammatory polyarthropathy and determined that it imposed no more than minimal limitations in Plaintiff's ability to do work. *See* Tr. 42. By doing so, the ALJ properly exercised his discretion to weigh conflicting evidence, because "when there is credible evidence on both sides of an issue it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly." *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (citing *Richardson*, 402 U.S. at 389-409). Thus, the Court will not overturn the ALJ's decision simply because, as

Plaintiff argues, conflicting medical evidence exists, and the ALJ resolved the conflicts in the evidence of record. *Id.*; *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson*, 445 F.2d 656, 656 (5th Cir. 1971) ("It is 'solely the province of the Commissioner' to resolve conflicts in the evidence and assess the credibility of witnesses.").

Plaintiff's argument relies primarily on the opinions of Dr. Kibria, which the ALJ discussed at length. Tr. 47-48. To the extent the ALJ did not explicitly discuss other evidence noted by Plaintiff, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, . . . is not a broad rejection which is not enough to enable [the Court] to conclude that the ALJ considered [Plaintiff's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (alteration in the original) (citation and internal quotation marks omitted); Tr. 47-48. Here, as noted, the ALJ considered Plaintiff's medical condition as a whole. *See* Tr. 42. As long as substantial evidence supports the ALJ's decision, the Court must affirm, "even if the proof preponderates against it. [The Court] may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Dyer*, 395 F.3d 1210 (alteration in the original) (citations and internal quotation marks omitted). Accordingly, the Court finds that the ALJ properly considered the opinions of Dr. Kibria as to Plaintiff's inflammatory polyarthropathy and appropriately incorporated those limitations of Dr. Kibria which the ALJ found to be supported by the evidence of record into Plaintiff's RFC.

*ii. Plaintiff's obesity*

Plaintiff next mentions, without any elaboration, that the ALJ "failed to consider the compounding factor Plaintiff's obesity would have on his pain symptoms and limitations." Doc. 17 at 12. Plaintiff "has the burden to present evidence of h[is] impairments and their severity." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The Eleventh Circuit has held that "[a]lthough the ALJ must consider all the impairments the claimant alleges in determining whether the claimant is disabled, the ALJ need not scour the medical record searching for other impairments that might be disabling, either individually or in combination, that have not been identified by the claimant" *East v. Barnhart*, 197 F. App'x 899, 902 (11th Cir. 2006) (internal citations omitted); *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 534 (11th Cir. 2014).

Although there are references within the record to Plaintiff being overweight, certain medical records actually indicate that Plaintiff is not obese. *See* Tr. 566 (indicating "Y" in response to Overweight/Obesity, but "N" in response to Obesity – BMI > 30 kg/m2); *see also* Tr. 662 (indicating "N" in response to Obesity – BMI > 30 kg/m2). Moreover, if Plaintiff was suffering from obesity, it was Plaintiff's burden to present evidence and to identify that evidence to the ALJ. *See East*, 197 F. App'x at 902. Plaintiff did not do so here. His initial disability application indicates the following impairments: inability to lift his left arm, traumatic head injury, severe bulging disc in neck, bilateral carpal tunnel, and a vision impairment. Tr. 110. Plaintiff's reconsideration application lists the same impairments. Tr. 122. At the

hearing before the ALJ, Plaintiff's attorney asked Plaintiff his current height and weight and Plaintiff indicated that his weight fluctuated up to 30 pounds a year, but no questions were asked about Plaintiff's alleged obesity, nor did Plaintiff provide any testimony that would indicate he suffers from obesity. *See* Tr. 86. As such, the ALJ did not commit error by excluding discussion of Plaintiff's alleged obesity from his RFC assessment.

### iii. Hypothetical to the VE

Next Plaintiff argues that the ALJ did not pose a proper hypothetical to the VE because he did not include limitations for Plaintiff's obesity or his inflammatory polyarthropy in his hypothetical to the VE. Doc. 17 at 12-13. "[I]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Phillips*, 357 F.3d at 1240 n.7 (quotation marks omitted); *Jones*, 190 F.3d at 1229. "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant." *Ingram*, 496 F.3d at 1270 (citation and quotation marks omitted). While an ALJ's hypothetical question must take into account all of a claimant's impairments, *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002), the question need not include impairments that the ALJ has properly determined to be unsupported by the evidence in the record. *Crawford*, 363 F.3d at 1161.

Because the Court already has found that substantial evidence supports the ALJ's evaluation of the medical opinions relating to Plaintiff's inflammatory polyartropathy, and that Plaintiff failed to carry his burden to present evidence to

the ALJ concerning his alleged obesity, the Court finds that the ALJ's hypothetical to the VE was appropriate, and the RFC assessment was supported by substantial evidence. *See McGill v. Comm'r Soc. Sec.,* 682 F. App'x 738, 741 (11th Cir. Mar. 13, 2017) (citing *Crawford*, 363 F.3d at 1161 for its holding that the "ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported."); *Wilson* 284 F.3d at 1227; *Graham v. Bowen*, 790 F.2d 1527, 1576 (11th Cir. 1986).

### c. Plaintiff's credibility

Plaintiff finally argues the ALJ improperly discounted Plaintiff's testimony about his subjective symptoms, particularly concerning pain resulting from migraines. Doc. 17 at 13-14. The Commissioner responds that the ALJ properly assessed Plaintiff's subjective symptoms. Doc. 21 at 12-16.

The Eleventh Circuit has long recognized that "credibility determinations are the province of the ALJ." *Moore*, 405 F.3d at 1212 (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)). If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of a claimant's alleged symptoms and their effect on the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c)(1); *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561. The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities,

treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause.  *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Here, the Court finds that the ALJ properly considered and evaluated Plaintiff's testimony regarding the effects of his alleged symptoms on his activities. Based on the requirements of 20 C.F.R. § 404.1529, the ALJ considered Plaintiff's migraines and other subjective symptoms and the extent to which the symptoms reasonably can be accepted as consistent with the objective medical and other evidence.  Tr. 44-50.  Properly discussing the standard and the medical evidence, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  Tr. 45.

The ALJ explained:

Regarding credibility, the medical evidence does not reflect the degree of limitation the [Plaintiff] alleges. In terms of physical impairments, although the evidence indicates that the [Plaintiff] sought treatment for his shoulder and cervical spine, the diagnostic imaging and physical examination findings generally reflected minimal limitation; physical examination findings from October 2009 through November 2012 consistently indicated full range of motion. Diagnostic imaging findings of the shoulder in January 2011 indicated mild findings, and the [Plaintiff] was recommended conservative treatment. The gap in treatment regarding his shoulder also undermines the credibility of the [Plaintiff's] allegations; the record indicates no treatment between his January 2012 surgery and the September 2014 consultative examination. Furthermore, as of 2009, the [Plaintiff's] cervical spine appeared to function well, with little evidence of limitation in later treatment records; October and December 2011 cervical spine examinations indicated no muscle spasm.

In terms of the credibility of the [Plaintiff's] alleged mental limitations, the record indicates greater limitation during the period immediately after the [Plaintiff's] brain injury. However, from the February 2012 consultative examination onward, the evidence indicates only mild cognitive impairment; mental status examination findings from November 2012 through September 2014 indicated normal mood, affect, and behavior, and in September 2014, the [Plaintiff] exhibited normal cognitive work-related abilities. Moreover, the evidence does not indicate that the [Plaintiff] sought any mental health treatment between January 2010 and the February 2012 consultative examination, reflecting a significant gap in treatment.

Tr. 47 (internal citations omitted).

"If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted). "The question is not . . . whether the ALJ could have reasonably credited [a claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). "A clearly articulated credibility finding with supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562. Here, the Court finds that the ALJ clearly articulated the reasons for his credibility findings. *See* Tr. 47.

When making a credibility determination, the ALJ considers:

(i)     [Plaintiff's] daily activities;

(ii)    The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

(iii)   Precipitating and aggravating factors;

<ol type="i" start="4">
<li>The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [his] pain or other symptoms;</li>
</ol>

<ol type="i" start="5">
<li>Treatment, other than medication, [Plaintiff] receive[s] or ha[s] received for relief of [his] pain or other symptoms;</li>
</ol>

<ol type="i" start="6">
<li>Any measures [Plaintiff] use[s] or ha[s] used to relieve [his] pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and</li>
</ol>

<ol type="i" start="7">
<li>Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.</li>
</ol>

20 C.F.R. § 404.1529(c)(3). Here, the ALJ properly considered these factors. *See* Tr. 42-50. Although not specifically discussed with respect to his credibility assessment, the ALJ discussed Plaintiff's daily activities in determining whether he had an impairment that met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, and noted that Plaintiff had only mild restriction, reporting problems with personal care activities such as dressing, shaving, and hair care due to his limitations in reaching, but preparing his own meals, doing laundry, driving, shopping, and handling money in spite of these difficulties. Tr. 43, 262, 263-64. Moreover, the ALJ discussed in detail the frequency and intensity of Plaintiff's physical symptoms relating to his shoulder and cervical spine, noting that the course of treatment had been conservative, "with little evidence of limitation in later treatment records." Tr. 47, 350, 413. Concerning Plaintiff's mental limitations, the ALJ again discussed the intensity of Plaintiff's symptoms, noting that while Plaintiff's symptoms were more severe immediately following his brain injury, from February 2012 onward the evidence of record reflects only mild cognitive impairment. Tr. 47, 726, 731, 734, 740, 745, 749, 1217.

Focusing specifically on Plaintiff's migraines, which is the only subjective symptom that Plaintiff directly discusses in his brief, Plaintiff cites to eight different pages in the record. *See* Doc. 17 at 16. As was previously noted, out of the eight record cites provided by Plaintiff concerning migraines, five are records from before the alleged onset date. *See* Tr. 325, 332, 356, 358, 507. Of the remaining three citations, only Dr. Kibria's report makes any indication of the frequency of Plaintiff's migraines, noting them as "occasional." Tr. 1216. The other two records only note that Plaintiff suffered from migraines, but offer no insight into the frequency or severity of Plaintiff's migraines, or to any limitations stemming from Plaintiff's migraines. *See* Tr. 453, 747. Thus, although the ALJ may have been incorrect in stating that there was no evidence of headaches on the record, this error was harmless as these records do not show additional limitations. *See Hunter*, 609 F. App'x at 558 (finding error harmless if it does not affect the judge's ultimate determination); *see also Wind*, 133 F. App'x at 690 (placing burden on the plaintiff to show effect of an impairment on his ability to work).

Plaintiff further argues that "the ALJ apparently found Plaintiff credible for some indeterminate time period after his application was filed, noting that the evidence on or after February 2012 reportedly shows more mild [cognitive] impairment." As such, Plaintiff contends that at a minimum, the ALJ should have issued a favorable decision for the time period between January 1, 2011 and February 2012. Doc. 17 at 14. But Plaintiff fails to acknowledge that in the same paragraph the ALJ noted that "the evidence does not indicate that the claimant sought any

mental health treatment between January 2010 and the February 2012 consultative examination, reflecting a significant gap in treatment." Tr. 47. The ALJ's recognition that "the record indicates greater limitation during the period immediately after the claimant's brain injury," is not a statement that the ALJ found the Plaintiff to be totally disabled during this period, but rather an observation that immediately following the Plaintiff's injury, his symptoms were more pronounced than they were by the time of the consultative examination. Accordingly, the Court finds no error in the ALJ's credibility determination regarding Plaintiff's subjective cognitive symptoms. For the above reasons, the Court finds that the ALJ properly discounted Plaintiff's subjective complaints and testimony.

## V.   Conclusion

Upon review of the record, the Court concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   The decision of the Commissioner is **AFFIRMED**.

2.   The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 25th day of January, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record